And at this time, we'll hear McDonough v. Smith. Thank you. Morning, Honors. Brian Premo on behalf of Appellant Edward McDonough. The primary issue before the Court today is when does a 1983 claim based on a prosecutor's investigatory fabrication of evidence to wrongfully prosecute an innocent person based upon fabricated evidence accrue? As you know from the record, the District Court recast the plaintiff's claim, which was clearly stated in the complaint to be essentially akin to a malicious prosecution claim, that there was no probable cause whatsoever for an indictment or a prosecution, and reframed it as a RACUTI fabrication of evidence claimed by a police officer, which is an unacceptable corruption of the truth-seeking process of judicial function. There was no basis for the Court to do that. In fact, Appellee Smith did not even move to dismiss on the basis of statute of limitations. Several of the other defendants did. One of the defendants in the case, Brown, alleged that it was a RACUTI claim, but it was never framed as a RACUTI claim, nor could it be framed. Are you saying that he waived the affirmative defense? I'm sorry? Are you saying that he waived the affirmative defense of statute of limitations? Oh, no, no, I'm not. I'm saying that I think that it was pretty clear at the time, if we look at Carey and Heck and Wallace and now this year Manuel— Why would he raise that if he has absolute immunity? I'm sorry? Why would he— Why would he raise that if he's a prosecutor with absolute immunity? Well, but that's the point. There was no absolute immunity in this case because that was decided by Burns and Buckley that when— That's a different argument. Right. I would say Smith never said statute of limitations. Well, if you're a prosecutor, you probably go with your first best bet, which is absolute immunity. Well, I think— You can say he's wrong about it, but that's what you would claim. Well, with all due respect, Your Honor, I think that if you thought the claim was untimely, your best first defense would be the claim is untimely. And the reason I suggest that is because I think that when you look at the law and we go back 20, 30, 40 years, literally, from the Supreme Court to this very court— In fact, I was going to address the Zeray case. This is the Zeray case and the Manuel case in a nutshell. I think we come full circle. I think this court and the circuit courts throughout the country have been grappling with essentially when is enough enough? When can we hold a prosecutor responsible for unethical conduct and potentially criminal conduct in the fabrication of evidence to— To the extent that you're claiming something other than malicious prosecution, which that's what's been covered by the immunity, and you're looking to treat that as a separate claim, but you want the malicious prosecution accrual. My problem with that is your client was tried twice. Yeah. And certainly by the end of the second—by the end of the first trial, he was aware of his fabrication claim. Why shouldn't he have had to raise it within the statute of limitations from that time? Well, the point is, Your Honor, first and foremost, I was the trial attorney. And I can tell you as a practical matter, all these discussions that you see in appellate courts and in district courts are for real. It is very difficult to defend a defendant in a 116-count and then severed 74-count indictment over a matter of three years and then at the same time commence an action in federal court alleging— You had to commence it at the same time, but you had to commence it within the statute of limitations, which would have been well after. The point is that Heck does not toll the statute of limitations. It stays the action while the criminal proceeding is going on, but you have to bring the action. Well, this isn't a Heck issue, Your Honor, with all due respect. But the point is, the general principle is that a claim accrues when a plaintiff knows or should know of an injury. And I'm having trouble understanding how you didn't know of the injury at least by the conclusion of the first trial. Again, with all due respect, I think that's conflating the issues. We obviously knew. We raised—in fact, we raised it. Why shouldn't that be when the claim accrues? Well, because we relied on Kerry and Heck and Wallace.  How do you rely on them? Well, we rely on that because the case law is clear that you are to determine when a federal civil rights claim accrues. You are to look at the—first identify the right implicated, the constitutional right implicated. And then you are to look at the most analogous common law tort. So when you take a case where it is I'm innocent and you fabricated evidence and testimony to wrongfully indict me and then prosecute me over a course of three years as an innocent person, I have to reasonably rely on the law. And when we look back at Zeray, Zeray was a case in which this court held that a prosecutor cannot relate back absolute immunity to an investigatory function, relying on Burns and Buckley to say that, hey, prosecutors don't have immunity for investigatory acts. And, in fact, this very court said, if we open the gates— How is that relevant, though, to the starting of the statute of limitations? If you say he was acting as an investigator rather than a prosecutor, so he doesn't get the protection of absolute immunity. How does that deal with Judge Radji's question, though? I'm getting there, Your Honor. Does that delay the start of the false evidence claim? Well, no. That's just looking at the analysis. The first thing is to identify the right and then to look at—first we have to identify the right, and then we have to look at the analogous common law tort, which, of course, in this case, if my client had claimed that the prosecutor or a police officer, for that matter, had fabricated evidence and then led to his arrest, well, we know that pre-action or pre-legal process deprivations would accrue and end at the time of the start of a legal proceeding, for example, or Raymond or being bound over or an arrest warrant or an indictment, and then any damages recoverable after that would have to come into what this Court termed to be a due process claim. Now, other courts, the Fourth Circuit, the Third Circuit, the Fifth Circuit, and now the Seventh Circuit, is grappling with the issue, but this Court in Singer held, as Manuel now is saying, that it's not actually a Fifth Amendment due process issue or Fourteenth. It's a Fourth Amendment. It's the right to be free from prosecution without probable cause. I would suggest that based on the Manuel case of this year, which is, as the Court's well aware, on remand to the Seventh Circuit as we speak, and the argument's been had. I listened to it, and I looked at the briefs, but that issue is being dealt with now in the Seventh Circuit. It's one of three circuit courts that did not already rule that the Fourth Amendment is the right implicated even through the judicial process. The importance of that, of course, is that this Court in Singer held that that is akin to a malicious prosecution, which, of course, it is. Now, when we look at all the other cases cited in the brief from all the other circuits that have held similarly to this circuit, the Singer case, you talk about whether it's a misuse of legal process or abusive process or a wrongful use of process or post-legal process deprivations. What we know now from Manuel, the Supreme Court of the United States has said, deprivations that go hand-in-hand with a criminal prosecution in fact state or implicate a Fourth Amendment right. Again, it brings us right back to Zeray. So to answer your question, when we looked at it initially, and believe me, I did. Well, my concern with all of this is you want to treat it like the prosecution, but you don't want the immunity that goes with prosecutors' actions at prosecution. So now you're talking about how they violated it in the investigatory phase, but how did you get injured by it then? Thank you. I think that is exactly— How did you get injured by it? Answer that question. Okay, he got injured by it because he was—that investigatory fabrication of evidence was then used in a grand jury to obtain an indictment, which led to his post-indictment arrest, which led to his restrictions on his liberty, which led to his reputation damage, which led to his cost for the defense of a— You're not disagreeing that a prosecutor's actions in the grand jury are also subject to qualified immunity? No, I'm not. So where is there an injury here that's not covered by the immunity? That's where we go back to Zerais, and we go back to Burns, and we go back to Buckley. Tell me what it is. It is because an investigative prosecutor has only qualified immunity, not absolute immunity. So we can bring the action, but the other issue is the accrual of the action. So when we get to the accrual issue, we now have to look at the common law. I think the best way to look at this case, and I understand, Your Honors, I've read hundreds and hundreds and hundreds and hundreds of cases on this issue so far. I understand all the courts are grappling with when is enough is enough for a prosecutor and when can they be held responsible, and I get the problem. The problem really is the melding of these concepts that at common law, prosecutors have to be free from prosecution in a civil rights case. They have to be. So we got to the most just prosecution, and I can't speak for this Court, but when I read Zerais 50 times, I think that the Court was trying to grapple with, well, how do we do that? When is enough enough? Well, I can tell you when enough is enough is because we've already said it, and other courts have said it. You cannot fabricate evidence, and if you fabricate evidence and you use it to cause a deprivation of somebody's constitutional rights, that's enough. You cannot do that. So this Court said we will not relate back absolute immunity to your investigatory function, and if you foresee that you're going to use that evidence in a criminal proceeding to deprive a person of their constitutional rights, then you may be held accountable. You do not have absolute immunity. That, I understand, is the problem, but I think it's very simple if we look at it and we say, well, we take the prosecutor out, because when a prosecutor investigates a case, he stands as a police officer. I think we all would agree with that. So if a prosecutor stands as a police officer and you have a police officer fabricate evidence, as in Manuel, fabricate testimony, as in Manuel, go before a grand jury and falsely testify against the defendant, as in Manuel, and then there's an indictment and the person is deprived of his liberty by being incarcerated for 75 days or more, well, the courts have said that's a deprivation of constitutional proportion, correct? But there are other deprivations, and that's what Manuel said. Manuel said particularly pretrial detention, but not just pretrial detention. It's any deprivation of your constitutional rights caused by the misuse of a judicial process. We did, but when we look at the most analogous tort, it still is malicious prosecution. Under any circumstances, but I think that we always get hung up on this term of maliciousness, and I would suggest that, in fact, in Manuel, as in Zeray, you don't need maliciousness. You don't superimpose the common law tort element onto the 1983 action. You just look at it by analogy to see what tort is most akin to the claim. And so that's what we had here, and we did that. We have the argument. Thank you. Let's hear the other side of it then. Good morning. I'm Tom O'Connor. I'm here for Mr. Smith, the special prosecutor in the underlying criminal prosecution. First of all, just because two constitutional claims may have the same providence here under the Fourth Amendment, that certainly does not mean that they shouldn't be analyzed separately. The 1983 malicious prosecution claim in its rudiments bears no resemblance to a 1983 fabricated evidence claim. The one malicious prosecution requires as a necessary element the absence of probable cause and a favorable termination. The accrual of that claim must abide the favorable termination. On the other hand, the fabrication of evidence claim requires neither. Are you saying that if he'd been convicted, you wouldn't be taking the attitude that, well, he can't complain of falsification of evidence because he's convicted? You'd be making that argument to us. The significance of a conviction, in my mind, is that the heck deferred accrual would be triggered. So it wouldn't be that it wouldn't state malicious prosecution. It would be that he'd have to go and get the conviction overturned to satisfy heck. Exactly. Okay. Exactly. Here, there is no conviction, so per force, heck does not come into play. The plaintiff, in his submissions, concedes that where there is untainted probable cause with an accompanying fabrication of evidence claim, he concedes that that fabrication of evidence claim accrues under the traditional federal accrual rule. That is, when the plaintiff becomes aware or should have become aware of a constitutional injury that was caused by the fabrication of evidence. However, he states also that this claim is a claim, let me get his word, is a quintessential claim of malicious prosecution premised upon the fabrication of evidence. So he is establishing, conceding there is a congruence between his fabrication of evidence claim and the malicious prosecution claim. And he states that under these circumstances, the facts spawn two claims. One in malicious prosecution, the other in fabrication of evidence. But that's not the law of this circuit. Under those circumstances, the only claim that is alleged is a malicious prosecution claim. And as recently as October 27 of this year, this court decided Dufort versus the city of New York, which had the same profile as the claim. If you're saying that under those circumstances, the only claim that is pleaded is malicious prosecution, then you're really saying that prosecutors have absolute immunity for fabricating evidence. Under these circumstances, yes. You are saying that? Yes, because as this court said a month ago, under those circumstances where there is a congruence between the two claims from the allegations and the complaint, the fabrication of evidence claim is duplicative and should be dismissed. So my position is, and by the way... The counsel's argument is that they use the fabricated evidence at trial. For the use at trial, they can't be sued because they've got immunity for their actions as prosecutors. But to the extent they concocted the evidence outside of the courtroom, they can be sued for that. Now, the question then is whether there's an injury distinct from whatever happened in the courtroom. And you heard your adversary explain that, you know, he got arrested, he got charged. There might be an argument as to whether that's a false arrest claim rather than a malicious prosecution claim. But he does argue as to why it's a distinct claim from the malicious prosecution. The concept of false arrest is not supported by any of the evidence in this case. That is a warrantless arrest whose scope ends at the time of either an arraignment or the issuance of process. So that's out. So you could never have a claim like this where there's an indictment? That the prosecutor's always protected from the investigative aspect of his performance? No, Brian is 100% correct. Well, first of all, because of its common law origin, a malicious prosecution claim, a prosecutor enjoys absolute immunity regardless of whether some of his conduct is in the investigatory stage or in the prosecutorial stage. Functional test, do you agree? And if the prosecutor's acting as an investigator rather than as a prosecutor, he doesn't get the protection of absolute immunity. There can be circumstances. He does get the protection with respect to a malicious prosecution claim because of its common law providence in which it didn't matter whether it was investigative or prosecutorial. The prosecutor has absolute immunity. Brian is correct, however, with respect to the fabrication of evidence claim. It does not protect conduct of a prosecutor in the investigative stage. He only has qualified immunity. My point in this argument is twofold. A, if the distinctiveness of these claims is preserved, then the fabrication of evidence claim accrued either at the time of the indictment, where, as you pointed out in your 1995 Singer decision, which has weathered the vague areas of time rather well, that constitutional injury occurs at the time the indictment is returned because of all of the implications of an indictment, of bail, or at the very latest, at the end of the first trial where a hung jury and a mistrial were declared. And both of those dates are beyond the three-year statute of limitations. Brian suggests, the plaintiff suggests, that because the fabrication of evidence claim impugns the integrity of the process, the judicial process, that that claim as well should abide the termination of the criminal prosecution. And I suggest that's not true. This court in Smith v. Campbell, a First Amendment retaliation claim, which impugns the integrity of the process every bit as much as a malicious prosecution claim, this court held that it is the time of the injury when Mrs. Smith was issued these bogus traffic tickets and not at the time of the outcome, but at the time the injury was sustained, triggered the statute of limitations. So my position is, on the one hand, if the claims remain separate, the accrual occurred more than three years prior to the commencement of this action as the district court held. On the other hand, if there is sufficient identity with the allegations supporting malicious prosecution and fabrication of evidence, as the plaintiff alleges, he says it is a quintessential claim of malicious prosecution premised upon the fabrication of evidence. That's a malicious prosecution claim under a different name. And as this court said a month ago, that claim is superfluous. So I think the proper disposition of this appeal is the affirmance of the district court's decision. Thank you. Thank you both. We will reserve decision.